

**PROVIDENT LAW**

Christopher J. Charles, SBN 023148
16100 N. 71st Street, Suite 350
Scottsdale, AZ 85254
Telephone: (480) 388-3343
Facsimile: (602) 753-1270
For E-Service and Court Use Only: fileclerk@providentlawyers.com

Ann-Marie White René*
Virginia Bar License No. 91166
Center for Law & Religious Freedom
8001 Braddock Road, Ste 302
Springfield, VA 22151
Office: 703-642-1070, Ext: 404
Email: Arene@clsnet.org
*Pro Hac Vice

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA
### PHOENIX DIVISION

| | |
|---|---|
| St. Herman's Table, an Arizona nonprofit corporation; and Lance Brace,<br><br>                              Plaintiffs,<br><br>vs.<br><br>City of Phoenix,<br><br>                              Defendants. | Case No. 2:26-cv-03882<br><br>**PLAINTIFFS' REPLY IN SUPPPORT OF THEIR EMERGENCY APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION** |

Plaintiffs, St. Herman's Table and Lance Brace, submit this Reply in Support of their Emergency Application for a Temporary Restraining Order.

## SUMMARY OF ARGUMENT

The Free Exercise Clause is not eviscerated merely because the City has alleged a distinction between "private" and "public" events. Indeed, the Supreme Court has rejected this very argument. *See Tandon v. Newsom*, 992 F.3d 916, 917 (9th Cir.), *overruled*, 593 U.S. 61 (2021).[1] Rather, to be constitutional, the Ordinance "must place religious activities on par with the most favored class of comparable secular activities, or face strict scrutiny." 992 F.3d at 932 (Bumatay, J., dissenting) (citing *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 16 (2020)); *see also Roman Cath. Diocese*, 592 U.S. at 29, (Kavanaugh, J., concurring) (explaining that under the Free Exercise Clause, the government must justify differential treatment between "favored" secular businesses and religious exercise despite the same COVID-19 risks).

The undisputed facts in this case are that the City allows food distribution to friends and family every day of the month without the need for any permit. But if the food is being handed to homeless neighbors of the Plaintiffs, that same act is limited to, at most, twice a month, and the Plaintiffs must compete for the two available permits; they are confined to the parking lot for their event; their volunteers must all have food handler certificates; and they must provide $2 million dollars in indemnity insurance months in advance. Ex. 1.; Brace Decl. ¶¶ 42-46. But, as *Tandon* held, the Free Exercise Clause applies regardless of how the City describes the same event—either as public or "private." The Ordinance treats the Plaintiffs'

---

[1] In *Tandon*, California subjected "private" gatherings to heightened regulations, which the Supreme Court held violated the Free Exercise Clause.

religious exercise far less favorably than "*any*"—and many—secular activities. *Tandon*, 593 U.S. at 62 (emphasis in original). The Ordinance is therefore not neutral or generally applicable and the City must satisfy strict scrutiny.

Moreover, the City concedes that the Plaintiffs can host "private" food distribution events with their church parishioners at the park without a permit but not "public" food distribution events for the homeless. Resp. in Opp. 5. As the City admits, its Ordinance criminalizes the same activity with the same identical risks when it is done for certain human beings for charitable—including the Plaintiffs' religious—reasons. The Ordinance is therefore not neutral and generally applicable under the Free Exercise Clause as applied to the Plaintiffs. The Supreme Court held unanimously that laws that "gerrymander" specific religious exercise are not neutral and generally applicable. *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 535 (1993) (citation omitted).

Because the Ordinance is not neutral and generally applicable under both *Tandon* and *Lukumi*, it is subject to strict scrutiny. And the City concedes its Ordinance cannot survive such scrutiny as it did not even address this standard in its briefing. Resp. in Opp. 7. The City's silence about strict scrutiny is understandable; it cannot claim, let alone prove, that it has a *compelling* interest in denying the Plaintiffs an exemption to the Ordinance and that criminalizing their weekly religious exercise is the least restrictive way of furthering that interest.

Additionally, the Ordinance's permitting scheme is a presumptively unconstitutional prior restraint. Neither the Ordinance's implementing rules nor a declaration submitted from a city official meet the Ninth Circuit's requirements that: (1) the Ordinance be narrowly drawn, (2) that the Ordinance provide an explanation for any permitting denial; and (3) that the Ordinance allow for an appeal. Resp. in Opp. 10-12. The Supreme Court and Ninth Circuit have made clear that a law itself—here, the *Ordinance*—must meet all, or most, of these three requirements. This Ordinance fails to meet any of them.

Therefore, the Plaintiffs are likely to succeed on the merits of their Counts I and II. The Plaintiffs' need for relief comes from the City's adoption of the Ordinance. The Plaintiffs had hoped litigation would not be necessary as they attempted to seek a resolution with the City before the filing of this lawsuit. Brace Decl. Attachment 5. But the City never responded to the Plaintiffs' request (Brace Dasecl. ¶ 52) and now claims the Plaintiffs' patience, not the City's callous silence, created the need for a temporary restraining order.

For all of the reasons detailed herein and in the Plaintiffs' initial Motion and Memorandum in Support of its Application for a Temporary Restraining Order, the Plaintiffs respectfully request that the Court enter an order prohibiting the City from enforcing the Ordinance against the Plaintiffs for fourteen (14) days and until the Court can hold a hearing, or rule, on the Plaintiffs' Motion for a Preliminary Injunction.

## ARGUMENT

**I.    *Tandon* rejected the private versus public distinction and here it is a red herring.**

The City has argued that the Ordinance is neutral and generally applicable because it only criminalizes "public" food distribution but not "private" food distribution. Resp. in Opp. 5. But in *Tandon*, the Supreme Court rejected this distinction outright, finding that California's COVID-19 regulations that limited "private" gatherings were not neutral and generally applicable under the Free Exercise Clause. *Tandon*, 992 F.3d at 917, *overruled*, 593 U.S. 61. Instead, as the City even acknowledges, *Tandon* held that "whether two activities are comparable for purposes of the Free Exercise Clause must be judged against the asserted government interest that justifies the regulation at issue" 593 U.S. at 62 (citation omitted).

Here, the comparable activities are various gatherings that, according to the Ordinance's own text, create "large crowds, increased noise, obstruction of public spaces, litter, and the accumulation of trash, debris, and food waste." Ex. 1. Both "private" and "public" events involving food, drink, and people pose risks of crowding, noise, trash, and litter. The City's attempt to recast its alleged interest in the Ordinance as simply one between "private" and "public" is a red herring. *Tandon* requires that this Court consider the articulated risks underlying the City's alleged public versus private distinction and weigh whether the Plaintiffs' specific religious exercise—almsgiving to the homeless—is treated less favorably than "*any* comparable secular activity." *Tandon*, 593 U.S. at 62 (emphasis in original). Pursuant to the Ordinance, the Plaintiffs' ministry is treated less favorably than many forms

5

of secular gatherings—toddler birthday parties, family reunions, and the like. The Ordinance is therefore subject to strict scrutiny under *Tandon* alone.

Further, the City admits that under the Ordinance, there is only one specific type of religious exercise that is now a criminal offense—the Plaintiffs' almsgiving and distribution of food to members of the public done weekly. The City concedes that Mr. Brace and St. Herman's need not run the City's permitting gauntlet to host a "picnic where food is served to parishioners and not 'to any member of the general public[.]'" Resp. in Opp. 5. But this targeted criminalization of some, but not all, of the Plaintiffs' religious exercise, is a "religious gerrymander" which the Supreme Court has held is not generally applicable. *Lukumi*, 508 U.S. at 535. In *Lukumi*, the Supreme Court *unanimously* held that an ordinance which regulated ritual animal sacrifice was not generally applicable as applied because it was "an impermissible attempt to target petitioners and their religious practices." *Id*. The same is true here. The City has criminalized the Plaintiffs' specific religious practice of public evangelism and almsgiving to their homeless neighbors. This is an unconstitutional religious gerrymander under *Lukumi*.

Pursuant to *Tandon* and *Lukumi*, the Ordinance is subject to strict scrutiny, which the City does not argue it can meet. For this reason alone, the Plaintiffs are entitled to a temporary restraining order.

## II.    The City cannot cure the Ordinance's unbridled discretion with its own subjective implementing rules and a declaration from a government official.

The Plaintiffs' food distribution has a religious message: it demonstrates as well as audibly shares the love of Christ for "the least of these [His] brothers and sisters." Matthew 25:40; Brace Decl. ¶12.  Before every meal on Thursdays, the Plaintiffs offer a prayer in the park. *Id*. ¶ 16. The Plaintiffs' food distribution includes a "buffet-style" table, at which the homeless walk along the table and receive food, Bibles, and religious items. *Id*. ¶ 27. The Plaintiffs listen to the homeless, treat them with equal dignity, offer biblical counsel and prayer, and invite them to their Church. Plaintiffs are most certainly engaged in expressive activity in word and deed, protected by the Free Speech Clause.[2]

As such, the Ordinance's permitting scheme is a *presumptively* unconstitutional prior restraint. *Berger v. City of Seattle*, 569 F.3d 1029, 1037 (9th Cir. 2009) (*en banc*).  The burden is therefore on the City to demonstrate that it meets the Ninth Circuit's requirements that *the Ordinance* (1) articulates narrow, objective, and definite standards to guide the licensing authority; (2) requires the permitting official to provide an explanation for his decision; and (3) allows for some forum to appeal the permitting decision. *Seattle Affiliate of the Oct. 22nd*

---

[2] Ironically, in its briefing, the City argues that sometimes, *just the name of an organization* in conjunction with food distribution can sufficiently convey a protected expressive message. Resp. in Opp. 9. In the City's view, the name of "food not bombs" in other cases was sufficient to be protected under the First Amendment. *See id*. Apparently, the City has not considered the name of the Plaintiff here, *St. Herman's Table*. As explained by Mr. Brace, St. Herman's Table was named after St. Herman himself, a Russian Orthodox saint. Brace Decl. ¶ 7. Pursuant to the City's own argument, the Plaintiffs meet the standard for protection under the First Amendment for their food distribution.

*Coalition to Stop Police Brutality v. City of Seattle*, 550 F.3d 788, 791 (9th Cir. 2008); *Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1025 (9th Cir. 2009). But the City does not point to any part of the *Ordinance* that meets these requirements. Instead, the City claims that its subjective implementing rules and a declaration from a City employee are sufficient to cure the Ordinance's unbridled discretion. *See* Resp. in Opp. 10-12. This is contrary to the Ninth Circuit's holding on this issue.

It is true that the Ninth Circuit has stated that "[n]one of [the three aforementioned] factors is itself necessarily determinative of whether a statute confers excess discretion." *Id*. at 12 (citing *Seattle Affiliate*, 550 F.3d at 799). However, the City inexplicably omits in its briefing the very next statement from the Ninth Circuit: "[i]nstead, [courts] look to the totality of the factors to assess whether *this Ordinance* contains adequate safeguards to protect against official abuse." *Seattle Affiliate.* 550 F.3d at 799 (emphasis added).

Here, *this Ordinance* at issue contains *none* of the safeguards articulated by the Ninth Circuit in *Seattle Affiliate*. Instead, the City asks this Court to find that the vague language that the Director "adopt rules and procedures for the issuance of permits" and that such rules be designed "to minimize disruption to other park uses, ensure the safety of park guests, and maintain parks in a clean and sanitary condition[]" meets the requirement that the Ordinance "contain adequate standards to guide the [Director's] decision and render it subject to effective judicial review." Resp. in Opp. 10 (citation omitted). The City does not explain how

8

this is so. The Ordinance's language is vague, conclusory, and places no limits whatsoever on the Director's authority.

Neither is the Ordinance's legal infirmity healed by a declaration from a City official to *post facto* create a requirement that an applicant be given an explanation as to why he, or his organization, was denied a permit under the Ordinance. Resp. in Opp. 12 (citing Whitfield Decl. ¶ 24). As the required safeguards are absent in the *Ordinance itself*, it violates the Plaintiffs' right to free speech as applied. *Seattle Affiliate,* 550 F.3d at 799 (emphasis added).

Finally, the City does not even attempt to argue there is any appeal mechanism available to an individual or organization who has been denied a permit under the Ordinance. *See* Resp. in Opp. 12. Instead, the City incorrectly claims that such a requirement is not required of content-neutral laws. But the Ordinance here is not a content-neutral law. And even if it were, the Ninth Circuit in *Seattle Affiliate* held that the law in that case was content-neutral but still found that it delegated overly broad discretion to a government official because it did not provide the opportunity for an appeal. 550 F.3d at 798.

The Plaintiffs undoubtedly engage in expressive food distribution and the City has not met its burden to demonstrate that the Ordinance's permitting scheme is not an unconstitutional prior restraint.

### III.    The irreparable harm was created—and continues—because of the City.

The City argues that the Plaintiffs have "create[d]" their "emergency" by not challenging the Ordinance before it was even passed by the City. *See* Resp. in Opp. 16. But,

contrary to the City's spin, the emergency in this case is the threat of criminalization for constitutionally protected religious exercise which was created by the City and with which the City continues to threaten the Plaintiffs. The City's admission that it *seeks to unequally and substantially burden acts of religious exercise* is brazen and contrary to longstanding Supreme Court Free Exercise jurisprudence. The Plaintiffs have more than met the requirements for the issuance of a temporary restraining order. The Plaintiffs respectfully request the Court's intervention to prevent the citation or arrest of Mr. Brace or one of St. Herman's volunteers when they next minister to the homeless at Cave Creek Park on Thursday, June 11, 2026.

**DATED:** this <u>8th</u> day of June 2026.

PROVIDENT LAW®

Christopher J. Charles, Esq.

*Ann-Marie White René*

_____
Ann-Marie White René, Esq.
*Pro Hac Vice*\*
Virginia Bar License No. 91166

10

**Certificate of Service**

I certify that on June 8, 2026, I filed this document via the Court's CM/ECF filing system which will serve the following individuals via electronic mail:

Jean-Jacques Cabou
Perkins Coie
2525 E. Camelback Road Suite 500
Phoenix, AZ 85016-4227
602.351.8003
jcabou@perkinscoie.com

Margo Casselman
Perkins Coie
2525 E. Camelback Road Suite 500
Phoenix, AZ 85016-4227
602.351.8159
MCasselman@perkinscoie.com

*Ann-Marie White René*

_____
Ann-Marie White René, Esq.
*Pro Hac Vice*

11