PROVIDENT LAW

Christopher J. Charles, SBN 023148
16100 N. 71st Street, Suite 350
Scottsdale, AZ 85254
Telephone: (480) 388-3343
Facsimile: (602) 753-1270
For E-Service and Court Use Only: fileclerk@providentlawyers.com

Ann-Marie White René*
Virginia Bar License No. 91166
Center for Law & Religious Freedom
8001 Braddock Road, Ste 302
Springfield, VA 22151
Office: 703-642-1070, Ext: 404
Email: Arene@clsnet.org
**Pro Hac Vice*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**
**PHOENIX DIVISION**

| | |
|---|---|
| St. Herman's Table, an Arizona nonprofit corporation; and Lance Brace,<br><br>Plaintiffs,<br><br>vs.<br><br>City of Phoenix,<br><br>Defendants. | Case No. 2:26-cv-03882<br><br>**PLAINTIFFS' MOTION FOR JUDGMENT AND FOR PERMANENT INJUNCTIVE AND DECLARATORY RELIEF AND MEMORANDUM IN SUPPORT THEREOF** |

Plaintiffs, St. Herman's Table and Lance Brace, submit this Motion for Judgment and for Permanent Injunctive and Declaratory Relief, and Memorandum in Support Thereof.

PROVIDENT LAW

## EVIDENCE

In support of their Motion for Judgment and for Permanent Injunctive and Declaratory Relief,[1] the Plaintiffs submit and incorporate by reference: (1) the Ordinance previously filed on the Docket at No. 1-4, as Exhibit 1; (2) the Declaration of Lance Brace previously filed on the Docket at No. 2-2 ("Brace Decl."), as Exhibit 2; (3) the Supplemental Declaration of Mr. Brace and its Exhibits ("Supp. Brace Decl."), as Exhibit 3; (4) the deposition transcript of Parks and Recreation Director Martin Whitfield ("Whitfield Dep."), as Exhibit 4; (5) Exhibit 3 to Mr. Whitfield's Deposition (the "Amended Rules"), as Exhibit 5;[2] (6) Exhibit 7 to Mr. Whitfield's Deposition, as Exhibit 6; (7) Exhibit 11 to Mr. Whitfield's Deposition, as Exhibit 7; (8) Exhibit 14 to Mr. Whitfield's Deposition, as Exhibit 8; (9) the Declaration of Ann-

[1] Pursuant to the Court's Order consolidating the Plaintiffs' Motion for Preliminary Injunction with trial on the merits under Federal Rule of Civil Procedure 65(a)(2), the Plaintiffs submit this Motion for Judgment and for Permanent Injunctive and Declaratory Relief. As detailed herein, the Plaintiffs aver that they are entitled to permanent injunctive and declaratory relief because they prevail on their Counts I, II, III, IV, and V as pled in their Complaint. Because the Court has already found under *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008) that the Plaintiffs are likely to suffer irreparable harm and that the balance of equities and public interest weigh in the Plaintiffs' favor, the Plaintiffs have focused their arguments herein exclusively on success on the merits of their claims. However, the Plaintiffs do not waive any argument as to any of *Winter*'s four elements and reserve their right to pursue those arguments. Further still, because the Plaintiffs are asking for judgment as a matter of law, they are also filing separately on this day a Statement of Material Facts in accordance with this Court's Local Rule 56.1.

[2] For the Court's ease of reference, the Amended Rules can also be found on the City of Phoenix's official Parks and Recreation website at https://www.phoenix.gov/content/dam/phoenix/parkssite/documents/Rules%20and%20Procedures%20for%20Issuance%20of%20Medical%20Treatment%20and%20Food%20Distribution%20Parks%20Services%20Permits_Signed.pdf (last visited Sept. 7, 2026).

Marie White René ("René Decl.") and its Exhibits, as Exhibit 9;[3] and, (10) the Declaration of Brandy Chard ("Chard Decl."), founder of "Billy's Way Home" and its Exhibits, as Exhibit 10. The Plaintiffs respectfully request that the Court consider all of this evidence in support of their Motion.

## INTRODUCTION

Since the filing of this case, the City of Phoenix has begun enforcing its *Medical Treatment and Food Distribution in Parks Ordinance* ("the Ordinance"). Nonetheless, thanks to the Court's Temporary Restraining Order ("TRO"), Lance Brace and St. Herman's Table ("Plaintiffs") have been shielded from criminal liability for engaging in their weekly almsgiving of feeding and caring for their homeless friends at Cave Creek Park at Cactus. But the time has now come to address the unconstitutionality of the Ordinance.

As the Court has correctly noted, the City passed the Ordinance which "plainly categorizes food distribution with specific regard to motivation, requiring a permit only for those events undertaken for 'charitable or similar humanitarian purposes.'" (Doc. No. 18, at 6.) On July 10, 2026, the Director of the Phoenix Parks and Recreation Department ("the Department"), Martin Whitfield, issued amended internal rules for enforcement of the Ordinance ("Amended Rules"). The Amended Rules, like the Ordinance, define a "food

[3] The exhibits to counsel's Declaration are documents produced by the City in this action. One document, found at René Decl. Ex.1, was an Excel Spreadsheet that was produced in its native format by the City. The spreadsheet's first "tab" has been converted by counsel into a PDF for filing with the Court on PACER. Counsel intends to send to the Court via electronic mail the document in its native format and will carbon copy counsel for the City on that communication.



PROVIDENT LAW

distribution event" as "a gathering conducted by a private individual or organization, for charitable or similar humanitarian purposes, at a park, that is planned, organized, or conducted to distribute food to any member of the general public at no cost or for a nominal charge[.]" Ex. 5 (Whitfield Dep. Ex. 3). However, contrary to this very text, Director Whitfield has testified that he interprets his and the Department's authority as requiring "any" organization and individual distributing food to the "public" to be subject to the Ordinance's permitting scheme regardless of motive. Ex. 4 (Whitfield Dep. 30:17-23.) When confronted with the contradiction between the definition of a "food distribution event" and his alleged authority, Director Whitfield refused to clarify whether the food distribution permitting scheme applies to "any" individual and organization *or* just those with a "charitable" or "humanitarian" purpose. Ex. 4 (Whitfield Dep. 30:17-33:10.) To be entirely clear—*Director Whitfield has testified that he is now the sole arbiter as to which organizations and individuals are required to seek a Parks Services Permit*[4] *for a food distribution event under the Ordinance*. But pursuant to U.S. Supreme Court and Ninth Circuit precedent, the Director's alleged authority under the Amended Rules is not a limiting construction of the Ordinance, and his misinterpretation must be rejected by this Court. The Ordinance and Amended Rules both remain content-based and must be subject to strict scrutiny.

---

[4] The permit required by the Phoenix Parks and Recreation Department for a "food distribution event" under the Ordinance and Amended Rules is formally referred to as a "Parks Services Permit" by the Department and the City. Ex. 4.

Nonetheless, even accepting the Director's alleged authority, the food distribution permitting scheme as employed by him and the Department is still subject to strict scrutiny under the First Amendment's Free Exercise and Free Speech Clauses. For example, what has not changed under the Amended Rules or the Director's interpretation of them is that "private" gatherings such as birthday parties, social organization events, weddings, and reunions are still entirely exempt from the Ordinance's permitting scheme. Under *Tandon v. Newsom*, 593 U.S. 61 (2021), this is neither neutral nor generally applicable. Likewise, the discretion the Director has granted to himself under the Amended Rules to require all individuals and organizations serving food to the "public" to get a Parks Services Permit subjects the scheme to strict scrutiny under *Fulton v. City of Philadelphia*, 593 U.S. 522 (2021). In the two months the Ordinance has been in effect, Director Whitfield and the Department have already favored some speakers over others. One organization, the "Norton Vista Neighborhood Association", was allowed to hold a food distribution event open to the public on June 20, 2026, without the permit required by the Ordinance. Another organization, "Divas of Da Desert", was authorized by Director Whitfield to hold a food distribution event for six hours, while the rules limit permitted events to no more than three hours. And another organization, "Billy's Way Home", applied first for a permit to be held in June at Cave Creek Park at Sweetwater, but that permit was awarded to an organization that applied *after* Billy's Way Home, in violation of the Department's alleged "first come, first served" policy.

PROVIDENT LAW

The City is boldly skirting the First Amendment rights of its citizens, and it cannot, as a matter of law, demonstrate in support of the Ordinance a compelling interest that it is advancing by the least restrictive means. Accordingly, the Plaintiffs respectfully request that the Court enter judgment against the City as to their Counts I, II, III, IV and V,[5] grant permanent injunctive and declaratory relief against the City prohibiting it from enforcing any aspect of the food distribution permitting scheme, particularly as against the Plaintiffs, and award the Plaintiffs their reasonable attorneys' costs and fees.

## ARGUMENT

### I. Counts I, II, and III: Free Exercise, Free Speech Prior Restraint, Free Speech Equal Access - Facial and As Applied Challenges

The Court should disregard the Director's misinterpretation that the Amended Rules allow him to require any organization and individual to get a Parks Services Permit if he subjectively determines they are serving the "public" because this interpretation is not a *limiting* construction of the Ordinance. Although it is true that when considering a First Amendment facial challenge, a court "must consider the City's limiting construction of the Ordinance, [a court is] not required to insert missing terms into the statute or adopt an interpretation precluded by the plain language of the ordinance." *Foti v. City of Menlo Park*, 146 F.3d 629, 639 (9th Cir. 1998) (citation omitted). Here, as noted by the Court already, the

---

[5] As detailed herein, the Plaintiffs bring their Counts I, II, and III as facial and as applied challenges, their Count IV as an as applied challenge only, and their Count V as a facial challenge only. The Plaintiffs voluntary dismiss their Count VI under the Arizona Free Exercise of Religion Act.



PROVIDENT LAW

plain language of the Ordinance subjects *only* organizations with a "charitable" and "similar humanitarian" purpose to its food distribution permitting scheme. Ex. 1. The Director's interpretation of the Ordinance—and assumption of *broader* authority to himself to enforce the Ordinance against any organization or individual—is not reasonably susceptible to any limiting construction. *See Reno v. ACLU*, 521 U.S. 844, 884 (1997) ("In considering a facial challenge, [a] Court may impose a limiting construction on a statute only if it is 'readily susceptible' to such a construction." (quoting *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 397 (1988)). Accordingly, when analyzing the Plaintiffs' facial challenges, the Court should disregard the Director's misinterpretation of the Ordinance and evaluate the Plaintiffs' claims by looking to the text of the Ordinance and Amended Rules. But even accepting the Director's assumed authority, the Plaintiffs still prevail on their facial and as applied challenges.

**a. Count I: Free Exercise – Facial and As Applied**

Laws "incidentally burdening religion" are not subject to strict scrutiny "so long as they are neutral and generally applicable." *Fulton*, 593 U.S. at 533 (2021). In general, a law will be deemed neutral if it "proscribe[s] the same conduct for all, regardless of motivation." *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1077 (9th Cir. 2015). As this Court noted, "subtle, charitable purposes certainly correlate with religious ones." Docket No. 18, at 6 (citing *Masterpiece Cakeshop v. Colorado C.R. Comm'n*, 584 U.S. 617, 638 (2018) and *Stormans, Inc.*, 794 F.3d at 1076-77).

Here, the very text of the Ordinance and the Amended Rules require only those individuals and organizations with a "charitable" and "humanitarian" purpose to get a Parks Services Permit to hold a food distribution event. Ex. 1; Ex. 5 (Whitfield Dep. Ex. 3.) The Ordinance and the Amended Rules lack facial neutrality.

Nonetheless, even accepting the Director's interpretation, this permitting scheme, too, is neither neutral nor generally applicable under *Tandon* and *Fulton*. This scheme still exempts comparable secular conduct from enforcement and creates a formal mechanism that impermissibly grants the Director discretion to determine whether an organization or individual must get a permit at all.

First, the Ordinance and the Amended Rules provide that "private" gatherings of "friends", "social organization events", and "family friends" such as "meals", weddings and reunions are exempt from the permitting scheme. Ex. 1; Ex. 5 (Whitfield Dep. Ex. 3.) Under *Tandon*, "government regulations are not neutral and generally applicable, and therefore trigger strict scrutiny under the Free Exercise Clause, whenever they treat *any* comparable secular activity more favorably than religious exercise." 593 U.S. at 61 (emphasis in original) (citing *Roman Catholic Diocese v. Cuomo*, 592 U.S. 14, 40 (2020)). "It is no answer that a [government] treats *some* comparable secular businesses or other activities as poorly as or even less favorably than the religious exercise at issue." *Id*. (emphasis added). To be constitutional, the Ordinance and Amended Rules must place religious food distribution "on par with the most favored class of comparable secular activities, or face strict scrutiny."

*Tandon v. Newsom*, 992 F.3d 916, 932 (9th Cir. 2021) (Bumatay, J., dissenting) (citing *Roman Catholic Diocese v Cuomo*, 592 U.S. 14,16 (2020).

Here, the text of both the Ordinance and the Amended Rules treat "private" gatherings more favorably than "food distribution event[s]"—depending on whether Mr. Whitfield decides those events are open to the "public." It does not matter that the Ordinance and Amended Rules treat religious organizations and non-religious organizations alike in that both must get a food distribution permit under the Director's interpretation. This scheme is subject to strict scrutiny because it still treats *some* comparable secular activity, like a birthday party, more favorably than religious food distribution. *Tandon*, 593 U.S. at 61. The Ordinance requires religious individuals and organizations to seek a permit under it to feed the homeless but does not require the same of groups hosting a high school reunion with barbeque. Both create noise, trash, and crowds. But the latter can use the park any day for however long they choose. They need not apply for a Parks Service Permit, are not limited to only a couple of hours in the park to eat their food and are not subject to pre-and-post inspections of the area in which they shared their meal. *See* Ex.10 (Chard Decl. ¶¶ 12-14.) Because the Ordinance and Amended Rules treat much more favorably those hosting "private" events with food for whatever purpose, despite the same risks to government interests, it is subject to strict scrutiny. *Tandon* at 62.

Similarly, under *Fulton*, a law is not generally applicable—and thus strict scrutiny applies—if the government has "in place a system of individual exemptions" that "'invites'



PROVIDENT LAW

the government to decide which reasons for not complying with the [law] are worthy of solicitude." *Fulton*, 593 U.S. at 537. Here, the discretion that Director Whitfield has testified he has under the Ordinance and Amended Rules subjects the Ordinance and those rules to strict scrutiny under *Fulton*. According to Director Whitfield, he and the Department's employees consider on a case-by-case "fact-intensive" basis whether an individual or organization is distributing food to the "public" to determine whether an individual or organization must get a Park Services Permit. Ex. 4 (Whitfield Dep. 131:3-7.) Director Whitfield testified there is no written criteria for how the Department determines whether an organization or individual is distributing food to the "public" or not. Ex. 4 (Whitfield Dep. 48:22-23.) When making this determination, he and his staff ask unspecified questions of the organization or individual such as "are you hosting a birthday party" and "did you send out invites" to decide whether the organization or individual must get a Parks Services Permit. Ex. 4 (Whitfield Dep. 48:10-14; 132:3-17.) When pressed what other questions are relevant in his determination, he responded that nothing else comes to mind. Ex. 4 (Whitfield Dep. 132:18-20.).

This subjective, "fact-intensive" permitting scheme is a "formal mechanism" which "invites[]" Director Whitfield and his staff to decide which reasons for not complying with the Ordinance are worthy of solicitude. *Fulton*, 593 U.S. at 537. Director Whitfield and the Department make this determination by asking *what the purpose is* of the food distribution event. If the purpose is a birthday party or wedding reception, Director Whitfield will exempt



PROVIDENT LAW

an individual or organization from the permitting scheme. Ex. 4 (Whitfield Dep. 127:12-22.) If the purpose is to provide food to the homeless in exercise of one's religion, Director Whitfield will not exempt an individual or organization from the Ordinance's permitting scheme. Ex. 4 (Whitfield Dep. 128:9-20) (Director Whitfield testifying that because Mr. Brace and St. Herman's Table are welcoming of the homeless they may not know, they must get a Parks Services Permit). Such discretion is not generally applicable under *Fulton*.

The Plaintiffs also bring their Free Exercise Claim as applied. Director Whitfield has testified that Mr. Brace and St. Herman's Table are required to get a permit under the Ordinance to engage in, at most, two food distribution events a month at Cave Creek Park at Cactus. Ex. 4 (Whitfield Dep. 128:9-20; 129:20-130:6.) The Plaintiffs must compete for these two monthly permits with other organizations that seek access to the same park. *See* Ex. 9 (René Decl., Ex. 1); Ex. 10 (Chard ¶ 10.) But St. Herman's Table is a *weekly* ministry. Ex. 2 (Brace Decl. ¶ 13.) For the past year, Mr. Brace has felt compelled by the Holy Spirit to take part in weekly almsgiving to the homeless at Cave Creek at Cactus. *Id*; Ex. 3 (Brace Supp. Decl. ¶¶ 18-20.) Mr. Brace would partake in almsgiving more frequently if his job and personal life permitted as this almsgiving is a mandatory tenet of his faith. Ex. 2 (Brace. Decl. ¶ 8.) Moreover, Mr. Brace's and St. Herman's religious exercise does not end after the food has been distributed. Mr. Brace and St. Herman's volunteers share the same meal that they give to their homeless friends in the park each week. Ex. 3 (Brace Supp. Decl. ¶ 8.) In Orthodox Christianity, meals are sacred acts. Feeding oneself and others is not just for feeding

the body. It is a spiritual act that connects an individual with God's Earthly blessings and others. Ex. 3 (Brace Supp. Decl. ¶ 9.) Mr. Brace and St. Herman's share the meal that they have distributed to the homeless to express God's love, to do as Christ commanded, and to signify that their dignity is equal under God. Ex. 3 (Brace Supp. Decl. ¶ 8.)

Limiting Mr. Brace and St. Herman's Table's religious exercise to at most, if they are lucky, twice a month is undoubtedly an "incidental burden" for which the Free Exercise Clause requires the Ordinance and Amended Rules to be neutral and generally applicable or withstand strict scrutiny. *Fulton*, 593 U.S. at 533. But as explained herein, the City's food distribution permitting scheme is neither.

Both the Ordinance and the Amended Rules exempt "private" gatherings. Under *Tandon*, this is not neutral and generally applicable because these private gatherings create the same risks of trash, noise, and crowds which the City asserts justify the Ordinance. Ex. 1. Although the City may claim that neither the Ordinance, nor the Amended Rules under Director Whitfield's interpretation, "discriminate" against the Plaintiffs because all organizations are subject to its permitting scheme, this is irrelevant. "It is no answer that a [government] treats *some* comparable secular businesses or other activities as poorly as or even less favorably than the religious exercise at issue." *Tandon*, 593 U.S. at 61 (emphasis added). To be constitutional, the Ordinance and Amended Rules must place Mr. Brace and St. Herman's Table's food distribution on par with the City's favored class of private gatherings. The Ordinance and Amended Rules—even accepting Director Whitfield's

PROVIDENT LAW

interpretation of them—fails to do this. Mr. Brace and St. Herman's Table are required to get a Parks Services Permit, are limited to, at best, twice a month for a maximum of two hours to distribute food and are required to undergo a pre-and-post inspection by the Department's employees. *See, e.g.*, Ex.10 (Chard Decl. ¶¶ 12-14). But the Ordinance and Amended Rules allow large meals of family and friends as often as they please, without a permit, for unlimited time, and without having to undergo any pre-and-post inspection. This is not neutral and generally applicable under *Tandon*.

Likewise, Director Whitfield's subjective, "fact-intensive" permitting scheme, as applied, is a "formal mechanism" which "invites[]" Mr. Whitfield and his Department staff to decide which reasons for not complying with the Ordinance are worthy of solicitude. *Fulton*, 593 U.S. at 537. Director Whitfield is the sole judge of what constitutes a "private" gathering and he makes this determination by asking *what the purpose is* of the food distribution event. Director Whitfield has determined that the Plaintiffs, because they are a religious organization and are always welcoming new attendees, must get a Park Services Permit. Such discretion is not generally applicable under *Fulton*. The Ordinance and Amended Rules, both facially and as applied to Mr. Brace and St. Herman's, are subject to strict scrutiny. *See infra* Part III.

**b. <u>Count II: Prior Restraint on Free Speech – Facial and As Applied</u>**

The First Amendment recognizes that "[a] permitting requirement is a prior restraint on speech and therefore bears a 'heavy presumption' against its constitutionality." *Berger v.*

*City of Seattle*, 569 F.3d 1029, 1037 (9th Cir. 2009) (citing *Forsyth Cty. v. Nationalist Movement*, 505 U.S. 123, 130(1992)). "Both the procedural hurdle of filling out and submitting a written application, and the temporal hurdle of waiting for the permit to be granted may discourage potential speakers." *Grossman v. City of Portland*, 33 F.3d 1200, 1206 (9th Cir. 1994). Nonetheless, municipalities may promulgate permit systems that place reasonable time, place, and manner restrictions on speech in a public forum. *See Forsyth Cty.*, 505 U.S. at 130. "To pass constitutional muster, a permit system must satisfy four criteria." *Cuviello v. City of Vallejo*, 944 F.3d 816, 827 (9th Cir. 2019). "First, the permit system must not delegate overly broad licensing discretion to a government official." *Id*. (citation omitted). "Second, the system must not be based on the content of the message." *Id*. (citation omitted). "Third, the system must be narrowly tailored to serve a significant governmental interest." *Id*. (citation omitted). "Finally, the system must leave open ample alternatives for communication." *Id*. (citation omitted).

The Plaintiffs bring their Prior Restraint Claim both facially and as applied. Director Whitfield has testified that Mr. Brace and St. Herman's Table are required to get a Parks Services Permit to engage in, at most, two food distribution events a month at Cave Creek Park at Cactus. Ex. 4 (Whitfield Dep. 128:9-20; 129:20-130:6.) This permitting scheme is therefore a prior restraint on Mr. Brace's and St. Herman's weekly religious speech and exercise. *Berger*, 569 F.3d at 1037. And for the reasons explained herein, the Ordinance and Amended Rules are content-based. Plaintiffs are required to seek a permit and are limited to

PROVIDENT LAW

two hours to distribute food because they are an organization that serves, according to Director Whitefield, the "public." Director Whitfield has determined that their purpose—feeding the homeless—is insufficient to fall within the exemptions to the permitting scheme. And even if considered content-neutral, the Ordinance and Amended Rules are not narrowly tailored as required by the Ninth Circuit. *See infra* I.b.ii. The Department's food distribution permitting scheme is subject to strict scrutiny and is not a reasonable time, place, and manner restriction both facially and as applied to Mr. Brace and St. Herman's Table.

***i. The Ordinance and Amended Rules are Content-Based***

"Government discrimination among viewpoints—or the regulation of speech based on 'the specific motivating ideology or the opinion or perspective of the speaker'—is a 'more blatant' and 'egregious form of content discrimination.'" *Reed v. Town of Gilbert*, 576 U.S. 155, 168 (2015) (citation omitted). Such is true of the City's food distribution permitting scheme. Both the Ordinance and its Amended Rules (despite the Director's misread of them) define "food distribution event" as "a gathering conducted by a private individual or organization, for charitable or similar humanitarian purposes, . . ." Ex. 1; Ex. 5 (Whitfield Dep. Ex. 3). This language expressly conditions a Parks Service Permit on motive, which is "obvious[ly]" content-based. *Reed*, 576 U.S. at 163. It "defin[es] regulated speech by particular subject matter," "draw[ing] distinctions based on the message a speaker conveys." *Id*. If the message at the park is "happy birthday" or "mazel tov" the event is unregulated; but



PROVIDENT LAW

if the message, in word and deed, is "We are all welcome at God's table", *see* Ex. 3 (Brace Supp. Decl. Ex. A), it is heavily regulated and confined.

Despite this, Director Whitfield avers he subjectively determines what organizations and individuals must get a Parks Services Permit by determining only whether they are hosting an event open to the "public" and not the content of the message they seek to convey. *See, e.g*, Ex. 4 (Whitfield Dep. 30:17-23.). But this Court should not "presume[ ] the [City] will act in good faith and adhere to standards absent from the ordinance's face." *City of Lakewood v. Plain Dealer Publ'g Co*., 486 U.S. 750, 770 (1988). "[T]he First Amendment protects against the Government; it does not leave us at the mercy of *noblesse oblige.* [A court] [sh]ould not uphold an unconstitutional statute merely because the Government promise[s] to use it responsibly." *United States v. Stevens*, 559 U.S. 460, 480 (2010). This is particularly true, as here, Director Whitfield and the Department have already favored some speakers over others.

One organization, the "Norton Vista Neighborhood Association", a favorite of Councilwoman Debra Stark, held an un-permitted event that was clearly open to the public on June 20, 2026. Ex. 3 (Brace Suppl. Decl. ¶¶ 22-29 and Exs. D, E, F, G). A flyer for the event advertised a movie and "Free Food" for the public. Ex. 3 (Brace Suppl. Decl. Ex. D). Director Whitfield denied knowledge of the event, but when asked whether he intended to enforce the Ordinance against the Norton Vista Neighborhood Association, he indicated he would not. Ex. 4 (Whitfield Dep. 110:17-111:8). However, the Department did send a



PROVIDENT LAW

violation notice of the Ordinance to a religious "group of 3 individuals on the south parking lot near the Walgreens handing out food to people in the park." Ex. 9 (René Decl., Ex. 2.) Apparently, the City will look the other way for a councilmember's favored organization that hosts throngs of people for a movie night with free food but will enforce the Ordinance against three religious individuals for daring to "hand[] out food to people in the park." *Id*.

Another organization, "Divas of Da Desert", was authorized by Director Whitfield to host a food distribution event for six hours despite that the Amended Rules require such events not to be hosted for more than three hours. Ex. 5 (Whitfield Dep. 3); Ex. 8 (Whitfield Dep. Ex. 14.); Ex. 9 (René Decl., Ex. 3.) And according to a spreadsheet produced by the City, another organization, "Billy's Way Home" applied first for a permit in June at Cave Creek Park at Sweetwater, but that permit was awarded to an organization that applied *after* Billy's Way Home, in violation of the Department's alleged "first come, first served" policy. Ex. 9 (René Decl., Ex. 1); Ex. 7 (Whitfield Dep. Ex. 11.) Director Whitfield had no explanation for this in his deposition. Ex. 4 (Whitfield Dep. 85:10-90:23.).

Director Whitfield claims he will not issue Parks Services permits based on the content of the applicant's message contrary to the unambiguous ("charitable") text of the Ordinance and Amended Rules. But the Department already has favored certain speakers over others, bending the rules for some, but not others. The Ordinance and Amended Rules are obviously content-based and the Court should "not uphold [it] merely because the Government promise[s] to use it responsibly." *Stevens*, 559 U.S. at 480. Particularly, as here, the



PROVIDENT LAW

government has already broken its promise. The Ordinance, Amended Rules, and Director Whitfield's alleged authority are *all* content-based, and therefore subject to strict scrutiny. *See infra* Section III.

***ii. The Ordinance and Amended Rules are not narrowly tailored***

Even assuming that the current food distribution permitting scheme is not content-based, it is still not narrowly tailored. *Cuviello*, 944 F.3d at 827. In *Santa Monica Food Not Bombs v. City of Santa Monica*, the Ninth Circuit concluded that one of the City of Santa Monica's ordinances, which required a permit for group activity that "may impede, obstruct, impair or interfere" with the free flow of traffic, was subject to intermediate scrutiny. 450 F.3d 1022, 1037 (9th Cir. 2006). Nonetheless, the Court found that the ordinance violated that scrutiny because "[w]ithout a provision limiting the permitting requirements to larger groups, or some other provision tailoring the regulation to events that realistically present *serious* traffic, safety, and competing use concerns, significantly beyond those presented on a daily basis by ordinary use of the streets and sidewalks" the scheme was insufficiently narrowly tailored to withstand time, place, and manner scrutiny. *Id*. at 1039. The Court declared: "a narrowly tailored permit requirement must maintain a close relationship between the size of the event and its likelihood of implicating government interests." *Id*. at 1040.

Further still, just last year, the Ninth Circuit explained that an ordinance is not narrowly tailored if is "hopelessly underinclusive." *Hubbard v. City of San Diego*, 139 F.4th 843, 852 (2025) (quoting *Reed*, 576 U.S. at 171). In *Hubbard*, the Ninth Circuit held that the City's



PROVIDENT LAW

prohibition on teaching yoga in parks was both content-based and not narrowly tailored because it "does not prohibit teaching various other subjects to four or more people in shoreline parks, including those that, like yoga, potentially involve physical movement." *Id*.

The Ninth Circuit requires that for an ordinance be considered narrowly tailored, it must demonstrate a "close" relationship between the size of the regulated conduct and the asserted government interest and that it not be underinclusive by exempting similar activities. Here, the Ordinance and its Amended Rules do not meet these requirements. The City has not limited its food distribution permitting scheme to large crowds and yet exempts "private" gatherings of *any size*. The Ordinance and Amended Rules allow for birthday parties, "social organization events", "family gatherings", and other "private" groups of hundreds to eat unpermitted together. Ex. 1.; Ex. 5 (Whitfield Depo. Ex. 3.) Because the Ordinance is not limited by crowd size and is underinclusive, it is not narrowly tailored.

**c. <u>Count III: Equal Access – Facial and As Applied</u>**

The Free Speech Clause protects "expressive religious activities." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 523 (2022), and the First Amendment protects equal access to public forums for religious speakers and religious speech, including religious expressive activities. *Widmar v. Vincent*, 454 U.S. 263 (1981); *Good News Club v. Milford Sch. Dist.*, 533 U.S. 98 (2001). Public parks are a traditional public forum in which religious speakers and religious activities are protected. *Pleasant Grove City v. Summum*, 555 U.S. 460, 469 (2009) (citations omitted). In order to justify disparate treatment in a public forum based



PROVIDENT LAW

on the religious content of a group's intended speech or activity, a government must "satisfy the standard of review appropriate to content-based exclusions. It must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *Widmar*, 454 U.S. at 269-270.

Here, the Ordinance and Amended Rules deny religious speakers and organizations seeking to distribute food to the homeless equal access to Phoenix City Parks. These religious speakers must compete for twice-a-month access and they must run the City's permitting gauntlet. All the while "private" expressive and associational activities that involve food are allowed to take place in the same parks without a permit. And the disparate treatment does not end with just the permit. Religious individuals and organizations seeking to feed the homeless as a religious activity are limited to, at most, three hours on a single day and must undergo pre-and-post inspections by the City. *See* Ex. 1; Ex. 5 (Whitfield Dep. Ex. 3); Ex. 10 (Chard Decl. ¶¶ 12-14.) Gatherings of "social organization events", "sporting events", and "family" and "family friends" may eat in the parks as often as they please and without City pre-approval. Ex. 1. This scheme denies equal access to religious speakers who seek to share a meal with their homeless friends as part of their religious exercise. *See, e.g., Good News Club v. Milford Central School*, 533 U.S. 98, 114 n.5 (2001) (explaining that "consistent with *Lamb's Chapel* [v. *Center Moriches Union Free School Dist.,* 508 U.S. 384 (1993)] and *Widmar*, [a] school could not deny equal access to [a religious] Club for any time that is generally available for public use.").

Moreover, although Director Whitfield claims that the City's food distribution permitting scheme applies to both religious and non-religious organizations, *see* Ex. 4 (Whitfield Dep. 30:20-23), this is of no relevance to the equal access analysis. The City does not cure a Free-Speech violation by also violating the rights of secular people. The fact that the City grants un-equal access to Phoenix City Parks to religious speakers and organizations is enough to subject the scheme to strict scrutiny, which the City cannot meet as a matter of law. *See infra* Part III.

Mr. Brace and St. Herman's also bring their Equal Access Claim as applied because quite clearly, they are not granted equal access to Phoenix City's Parks under the food distribution permitting scheme. The permitting scheme requires the Plaintiffs to compete with others for twice-a-month access to Cave Creek Park at Cactus. And even if they get that limited access, they are further limited in how long they may be in the park and must undergo inspections by the Department before and after their event. This obvious lack of equal access for religious speakers and the Plaintiffs subjects the City's scheme to strict scrutiny. *See infra* Part III.

**II. Count IV: Expressive Association – As Applied**

The Supreme Court has held that protected First Amendment activity includes "expressive association." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617-18, (1984). The right to expressive association is the "right to associate for the purpose of engaging in those activities protected by the First Amendment — speech, assembly, petition



PROVIDENT LAW

for the redress of grievances, and the exercise of religion." *Id*. at 618. This right can only be infringed upon if that infringement is "adopted to serve compelling [] interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms." *Boy Scouts of America v. Dale*, 530 U.S. 640, 648 (2000). But to determine whether a group is protected by the First Amendment's expressive associational right, a court first "must determine whether the group engages in 'expressive association.'" *Dale*, 530 U.S. at 648.

From the moment one approaches St. Herman's Table, the religious message being shared by Mr. Brace and St. Herman's volunteers is unmistakable. St. Herman's Table passes out Bibles alongside its food and displays icons of God and Orthodox saints. Ex. 3 (Brace Supp. Decl. ¶ 11 and Exs. A and B.). Mr. Brace always wears a t-shirt displaying the Orthodox Cross, and St. Herman's has a sign-in sheet for its participants asking them to list a prayer request. Ex. 2. (Brace Decl. ¶ 18); Ex. 3 (Brace Supp. Decl. ¶ 11). St. Herman's volunteers openly pray in the park before distributing any food, and throughout their shared meal, they engage in conversations about God with the homeless, encouraging them to come to church. Ex. 2. (Brace Decl. ¶ 16.) In August, St. Herman's Table's official banners arrived, which St. Herman's now also displays every Thursday in the park. Ex. 3 (Brace Supp. Decl. ¶ 11 and Ex. A.) St. Herman's message is so obvious that once, Mr. Brace ran into an individual who had attended a St. Herman's Table event on the street. This man recognized Mr. Brace as the "God people." Ex. 3 (Brace Supp. Decl. ¶ 12.) The undisputed evidence is that the Plaintiffs

PROVIDENT LAW

engage in expressive association protected by the First Amendment every Thursday at Cave Creek Park.

As such, the City's infringement on Mr. Brace's and St. Herman's expressive association only withstands scrutiny if the City can demonstrate "compelling [] interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms." *Dale*, 530 U.S. at 648 (2000). The City bears the burden of demonstrating all of these elements. *Peterson v. City of Los Angeles*, 2026 U.S. Dist. LEXIS 69171, *25 (2026).

The City cannot carry its burden. First, the City cannot demonstrate that its infringement is "unrelated" to Mr. Brace and St. Herman's expressive association because the Ordinance and Amended Rules, as explained, specifically require only those food distribution events with a "charitable" or "humanitarian" message to run its permitting scheme. And, even under Director Whitfield's contrary interpretation, Mr. Brace and St. Herman's are required to seek a Parks Services Permit for their religious food distribution because they, in their religious exercise, are welcoming of all on Thursday evenings. Director Whitfield testified he considers them serving the "public". Ex. 4 (Whitfield Dep. 128:9-20.) The language of the Ordinance and Amended Rules, and Director Whitfield's interpretation of them, are all *directly* related to Plaintiff's almsgiving and evangelism.

Further, and as a matter of law, the City cannot demonstrate that it has a compelling interest in the Ordinance, Amended Rules, and its infringement on Mr. Brace and St.



PROVIDENT LAW

Herman's expressive association rights. *See infra* Section III. St. Herman's and Mr. Brace have never been cited by the City for any violation of any of its trash, noise, or crowd ordinances, though they have been serving the homeless for a year at Cave Creek Park at Cactus. Ex. 2. (Brace Decl. ¶ 26); Ex. 3 (Brace Supp. Decl. ¶ 13.). Alleged governmental interests "ring hollow" when the government has been "complacent" about a subject only to "suddenly burst into action." *Cottonwood Christian Ctr. v. Cypress Redevelopment Agency*, 218 F. Supp. 2d 1203, 1225, 1228 (CD. Cal. 2002). And, as explained below, the City when it passed the Ordinance had no evidence demonstrating that food distribution events, and in particularly St. Herman's, result in more trash, crowds, or noise. *See infra* Part III. The City's food distribution permitting scheme as applied to the Plaintiffs infringes upon their right to expressive association, and the City cannot meet the required scrutiny to sustain that burdening.

**III. The City cannot meet strict scrutiny as a matter of law.**

Laws "[o]nly rarely" survive strict scrutiny. *Bernal v. Fainter*, 467 U.S. 216, 219 n.6 (1984). To meet such scrutiny under the Free Exercise Clause, the City must demonstrate that its permitting scheme "advances 'interests of the highest order' and is narrowly tailored to achieve those interests." *Fulton*, 593 U.S. at 522 (quoting *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 546 (1993). Likewise, for a content-based law to survive strict scrutiny under the Free Speech Clause, the City must demonstrate that the law "serves

a compelling government interest in the least restrictive manner possible." *Berger*, 569 F.3d at 1052.

**a. The City cannot demonstrate a compelling interest as a matter of law**

The Supreme Court has explained that "[o]nly the gravest abuses, endangering paramount interests" qualify as compelling. *Sherbert v. Verner*, 374 U.S. 398, 406 (1963) (citation omitted). Preventing crowds, noise, litter, and the accumulation of trash are simply not sufficient. *See, e.g, Fulton*, 593 U.S. at 541 (rejecting City of Philadelphia's alleged interests in prohibiting Catholic Social Services from declining to place foster children with same-sex couples as not sufficiently compelling); *Schneider v. State*, 308 U.S. 147, 162 (1939) ("[T]he purpose to keep the streets clean and of good appearance is insufficient to justify an ordinance which prohibits a person rightfully on a public street from handing literature to one willing to receive it."); *Pottinger v. Miami*, 810 F. Supp. 1551, 1581 (S.D. Fla. 1992) ("The City has a legitimate interest in having aesthetically pleasing parks and streets and in maintaining facilities in public areas. However, this interest is not compelling[.]").

Moreoever, when considering whether a government has a compelling interest, "[t]he creation of a system of exceptions [to that interest]. . . undermines the City's contention that its [ ] policies can brook no departures." *Fulton*, 593 U.S. at 542. Here, the Ordinance and Amended Rules categorically exempt from criminalization and enforcement meals at private gatherings of the same size. For this reason alone, the City's alleged interest in preventing



PROVIDENT LAW

"large crowds, increased noise, obstruction of public spaces, litter, and the accumulation of trash, debris, and food waste", Ex. 1., is undermined by the Ordinance's failure to regulate children's birthday parties, social organization events, weddings receptions, and other meals.

Further still, "speculation" in support of a government interest "is insufficient to satisfy strict scrutiny." *Fulton*, 593 U.S. at 542. The "strict scrutiny analysis requires not only that the government's stated purpose is a compelling interest, but that it is also a genuinely-held purpose." *Cottonwood*, 218 F. Supp. 2d at 1228. "To be a compelling interest, the [City] must show that the alleged objective was the legislature's 'actual purpose'" and "the legislature must have had a strong basis in evidence to support 9that justification[.]" *Shaw v. Hunt*, 517 U.S. 899, 908 n.4 (1996) (citation omitted). Here, at the City Council meeting when the Ordinance was adopted, Deputy City Manager Cynthia Aguilar was asked, "what empirical evidence do[es the City] have that restricting care distribution will result in measurable cleaner parks?" She responded: the City "do[es] not have data that is specific to that on park property." Ex. 2 (Brace Decl. ¶ 38 at 1:21:30.) Likewise, Director Whitfield testified that the Department did not even track how much trash or litter was left behind by food distribution events prior to passage of the Ordinance. Ex. 4 (Whitfield Dep. 27:10-14.)

In all, the City's asserted interests in the Ordinance are not compelling ones, the City has created exceptions to those alleged interests in its food distribution permitting scheme, and the City had no evidence to support any finding that the Ordinance would further those

interests at the time of Ordinance's passage. The City fails to meet strict scrutiny under the compelling interest inquiry alone.

**b. <u>Less restrictive means are available to the City</u>**

Nonetheless, even if the Ordinance's asserted interests were compelling and the City had evidence of those interests sufficient to carry its burden, means are available to the City less restrictive of the Plaintiffs' First Amendment rights. For example, as the Court has pointed out, the Department could "require permits based on an event's size, trash levels, or noise levels." Docket No. 18, at 7. Or, the City can enforce its noise, trash, crowd, and litter ordinances already on the books against any individual or entity that violates them in its parks.[6] *Schneider*, 308 U.S. at 162 (explaining that "[t]here are obvious methods of preventing littering. Amongst these is the punishment of those who actually throw papers on the streets."). Further still, simply allowing easy access to waste bins in the City's parks, and particularly at Cave Creek Park, is another less restrictive means the City could employ. *See* Ex. 10 (Chard Decl. ¶ 15.); Ex. 3 (Brace Supp. Decl. ¶ 21) (explaining that the City removed the dumpster at Cave Creek Park at Cactus months ago.) There are abundant less restrictive means that the City could employ to further its alleged interests before violating the First Amendment rights of its citizens and the Plaintiffs. *See, e.g,*

[6] *See* Phoenix, Az,, City Code § 2-22 (2026) (imposing liability upon any person responsible for a party, gathering, or event that requires a police response); *Id*. § 27-10 (2026) (prohibiting the dumping of waste and hazardous waste on public property); *Id*. § 23-11 (prohibiting, among other things, the obstruction of a public street, alley, sidewalk, or highway); *Id*. § 23-12 (prohibiting unreasonably loud, disturbing, unnecessary noise within city limits); *Id*. § 23-13 (prohibiting noises detrimental to life, health, or public peace).



PROVIDENT LAW

*St. Timothy's Episcopal Church v. City of Brookings*, 726 F. Supp. 3d 1231, 1245 (2024) (finding that the City defendant did not demonstrate either a compelling interest or least restrictive means before limiting the Plaintiff's "benevolent meal services" from three to four times a week to two times a week).

**IV. Count V: The Ordinance and Amended Rules Are Void for Vagueness**

"A criminal statute is void for vagueness if it is 'not sufficiently clear to provide guidance to citizens concerning how they can avoid violating it and to provide authorities with principles governing enforcement.'" *United States v. Zhi Yong Guo*, 634 F.3d 1119, 1121 (9th Cir. 2011) (citation omitted). In a facial challenge, a statute can be void for vagueness for one of two independent reasons. First, it is void if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited." *United States v. Harris*, 705 F.3d 929, 932 (9th Cir. 2013) (citation omitted). Second, it is void "if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732, 120 S. Ct. 2480, 147 L. Ed. 2d 597 (2000). "[A] more stringent vagueness test should apply if a statute interferes with First Amendment rights, and if a statute imposes criminal sanctions." *Matsumoto v. Labrador*, 122 F.4th 787 (9th Cir. 2024) (cleaned up). Here, the Ordinance, a criminal statute implicating First Amendment free exercise and free speech rights, fails both of the Ninth Circuit's void for vagueness tests.

First, neither the Ordinance nor the Amended Rules define how the Department is to determine at what point an individual qualifies as a "family" or a "family friend" as to be



PROVIDENT LAW

exempt from criminality. In fact, Director Whitfield does not know, either. Ex. 4 (Whitfield Dep. 57:1-3.) Director Whitfield testified there is no criteria underlying how the Department determines whether an event is open to the "public" versus being a private gathering of family or family friends. Ex. 4 (Whitfield Dep. 48:15-49:1.) Because the Director of the Department tasked with enforcing the Ordinance cannot even explain at what point its criminality begins or ends, the Ordinance is simply "not sufficiently clear to provide guidance to citizens concerning how they can avoid violating it." *Zhi Yong Guo*, 634 F.3d at 1121.

Likewise, the Department's permitting scheme of granting exemptions from criminality in the discretion of Director Whitfield is void for vagueness because it "authorizes [and] even encourages arbitrary and discriminatory enforcement." *Hill*, 530 U.S. at 732. Here, whether an individual or organization is required to get a Parks Services Permit, and the decision to criminally cite an unpermitted individual or organization, is left up to Director Whitfield to decide. Ex. 4 (Whitfield Dep. 67:14-18). And, the record establishes that in the two short months since the Ordinance went into effect, Director Whitfield and the Department have already taken uneven enforcement actions against various speakers. *See supra* Part I(b)(i). The Ordinance is void for vagueness under both of the Ninth Circuit's standards.

## CONCLUSION

The City has employed a draconian permitting scheme without regard to other ways in which its alleged interests can be addressed. And in doing so, the City violates the constitutional rights of its citizens, including the Plaintiffs. The Ordinance and Amended



PROVIDENT LAW

Rules cannot stand on their face or as applied. Plaintiffs therefore ask the Court to enter judgment against the City, grant permanent injunctive and declaratory relief prohibiting the City from enforcing any aspect of the Department's food distribution permitting scheme, particularly as against the Plaintiffs, and award the Plaintiffs their reasonable attorneys' costs and fees.

**DATED:** this 8th day of September 2026.

**PROVIDENT LAW®**

Christopher J. Charles, Esq.

Ann-Marie White René

Ann-Marie White René, Esq.
*Pro Hac Vice**

Steven T McFarland, Esq.
*Pro Hac Vice**
Washington Bar License No. 11111

**Certificate of Service**

I certify that on September 8, 2026, I filed this document via the Court's CM/ECF filing system which will serve Defendant's counsel of record.

Ann-Marie White René

Ann-Marie White René, Esq.



PROVIDENT LAW