PROVIDENT LAW

Christopher J. Charles, SBN 023148
16100 N. 71st Street, Suite 350
Scottsdale, AZ 85254
Telephone: (480) 388-3343
Facsimile: (602) 753-1270
For E-Service and Court Use Only: fileclerk@providentlawyers.com

Ann-Marie White René*
Virginia Bar License No. 91166
Center for Law & Religious Freedom
8001 Braddock Road, Ste 302
Springfield, VA 22151
Office: 703-642-1070, Ext: 404
Email: Arene@clsnet.org
**Pro Hac Vice*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**
**PHOENIX DIVISION**

St. Herman's Table, an Arizona nonprofit corporation; and Lance Brace,

Plaintiffs,

vs.

City of Phoenix,

Defendants.

Case No. 2:26-cv-03882

**PLAINTIFFS' REPLY TO THE CITY'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR JUDGMENT AND FOR PERMANENT INJUNCTIVE AND DECLARATORY RELIEF AND MEMORANDUM IN SUPPORT THEREOF**

PROVIDENT LAW

Plaintiffs, St. Herman's Table and Lance Brace, submit this Reply to the City's Response in Opposition to Plaintiffs' Motion for Judgment and for Permanent Injunctive and Declaratory Relief and Memorandum in Support Thereof ("Motion").

## ARGUMENT

The Court properly concluded that Plaintiffs were likely to prevail on their Free Exercise Claim in its ruling granting the Temporary Restraining Order ("TRO"). Subsequent discovery has only bolstered the factual foundation for that legal conclusion. Now, in its response in opposition, the City: (1) misidentifies the Ordinance's burden on Plaintiffs (Resp. in Opp. at 1-3); (2) has not cured its permitting scheme, which remains neither neutral nor generally applicable as religious meals are treated worse than their secular comparators and the Parks Director has discretion over who is limited to two events per month (*id*. at 3-8); (3) ignores the Ninth Circuit's criteria for what is expressive association (*id*. at p. 8-10); (4) cannot disguise the Ordinance's content-based discrimination (*id*. at p. 10-13); and, (5) does not attempt to meet strict scrutiny—which it cannot.

### I. The Ordinance violates the Free Exercise Clause.

The City does not dispute the sincerity of Plaintiffs' religious belief that God calls them to feed the homeless in Cave Creek Park at Cactus each week. Likewise, there is no question that the Ordinance forbids this weekly exercise. But the City misjudges the Ordinance's burden on Plaintiffs: it is not the act of applying for a permit but the fact that the Ordinance explicitly criminalizes Plaintiff's *weekly* religious exercise at Cave Creek Park at



PROVIDENT LAW

PROVIDENT LAW

Cactus. Moreover, the City misstates Plaintiffs' religious beliefs to argue that the permitting scheme is "at worst" an incidental burden. (*Id*. at 8.) But the Free Exercise Clause protects against incidental burdens. *Fulton v. City of Philadelphia*, 593 U.S. 522, 533 (2021). Nonetheless, the City dissects Mr. Brace's testimony, claiming that he testified that his "religion" does not require his almsgiving in Cave Creek Park at Cactus. (Resp. in Opp. at 6.) When read in context, however, Mr. Brace explained that of course the Orthodox Church does not require all adherents to perform their almsgiving at Cave Creek Park at Cactus weekly. Def's Ex. 8 (Brace Dep. 32:3-10; 36:16-25; 37:3-24; 73:21-25; 74:1-2.) Rather, it is Plaintiffs' personal religious belief—that the Holy Spirit has directed them personally—to perform their almsgiving at Cave Creek Park at Cactus on a weekly basis. Def's Ex. 8 (Brace Dep. 32:3-10; 36:16-25; 37:3-24; 73:21-25; 74:1-2.) The City reads Plaintiffs' free exercise to be unburdened if they ignore the Holy Spirit by feeding homeless persons elsewhere, or by distributing only water and Bibles at Cave Creek Park at Cactus. (Resp. in Opp. 8.) But the First Amendment does not defer to government-proposed workarounds. *See, e.g, Thomas v. Review Bd. of Ind. Employment Security Div*., 450 U.S. 707, 714 (1981) (explaining that "religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection.").

Here, the burden placed upon Plaintiffs' religious exercise by the Ordinance is not an incidental, just-get-a-permit burden. Rather, it requires Plaintiffs to compete for, at best, twice-a-month access to Cave Creek Park at Cactus, limits the amount of time they can

distribute food and eat with their homeless friends in the park, and requires them to undergo pre-and-post inspections by City employees of their events. Pls' Ex. 1; Ex.10 (Chard Decl. ¶¶ 12-14,) The City does not dispute these facts. And, if Plaintiffs exercise their faith *each week* without a permit, they can be criminally charged. Pls' Ex. 1, Sec. 24-45(H). The burden placed on Plaintiffs by the Ordinance to forgo their weekly ministry is not incidental, it is substantial. *See, e.g.*, *St. Timothy's Episcopal Church v. City of Brookings*, 726 F. Supp. 3d 1231, 1244 (D. Or. 2024) (limiting the number of days from four to two that a ministry can provide meal services is a substantial burden under the Religious Freedom Restoration Act). Regardless of whether the burden is incidental or substantial, however, the Ordinance is subject to strict scrutiny[1] as it is neither facially nor operationally neutral.

***a. The Ordinance is not facially neutral.***

The City's argument that the Ordinance is facially neutral is a circular one. The City argues facial neutrality is lacking only if "[g]overnment action . . . burdens religious conduct because of its *religious* motivation[.]" *McTernan v. City of York*, 564 F.3d 636, 647 (3d Cir. 2009) (emphasis added). The City then concludes that the Ordinance here is facially neutral because "*all charitable* food-distribution events" must get a Parks Services Permit under it. (Resp. in Opp. at 13) (emphasis in original). But neither the Ordinance nor the City draws any distinction between *religious* motivation and *charitable* motivation. To the contrary, the City

[1] For a second time, in its response to Plaintiffs' Motion, the City, to its credit, does not make any argument that it can meet strict scrutiny. Thus, if the Ordinance is not both neutral and generally applicable, Plaintiffs' Free Exercise Claim prevails.

argues that the Ordinance requires all religiously motivated food distribution events to get a Parks Services Permit.[2] (*See id*. at 10-13.) The Supreme Court holds that "if the object of a law is to infringe upon or restrict practices because of their religious motivation, the law is not neutral." *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 533 (1993) (citation omitted). Here, according to the City, *all* religiously motivated public food-distribution events must get a permit under the Ordinance. A meal motivated by a family or social celebration is exempted. Pls' Ex. 1, Sec. 24-45(G)(4). The Court was therefore correct to find that this "subtle" departure from neutrality is impermissible under the Free Exercise Clause. Docket No. 18, at 6 (citations omitted); *Lukumi*, 508 U.S. at 534 (recognizing that the Free Exercise Clause protects against "subtle" and "masked" departures from neutrality).

Nonetheless, even if the Court were to now find that the Ordinance is facially neutral, the Ordinance still is not neutral in operation under *Tandon v. Newsom*, 593 U.S. 61 (2021) and *Fulton*. "A facially neutral law need not exclusively burden religious persons to be regarded as non-neutral in operation." *Bates v. Fariborz Pakseresht*, 146 F.4th 772, 795 (9th Cir. 2025). *Fulton* and *Tandon* clarify that "favoring comparable secular activity is sufficient" for finding that a policy is neither neutral nor generally applicable. *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ*., 82 F.4th 664, 686 (2023) (*en banc*).

[2] Tellingly, the City seems to concede in footnote 4 of its brief in opposition that secular organizations are in fact allowed to host food distribution events so long as they are not doing so with any charitable or religious motive. The City itself appears to use charitable and religious synonymously, making it all the clearer that the Ordinance is not facially neutral.



PROVIDENT LAW

***b. The City mistakes comparators and that comparators need only be similar.***

The City attempts to avoid a full *Tandon* analysis by claiming that the Ordinance's "private" versus "public" shell game makes these gatherings not comparable for purposes of the Free Exercise Clause. (Resp. in Opp. at 13.) But the City misidentifies the comparable activities at play for *Tandon* purposes. The proper inquiry is between the relevant *religious exercise* and *secular* activities at issue. *Tandon*. 593 U.S. at 63 (citation omitted). "Where the government permits other activities [here, private celebrations] to proceed with precautions, *it must show that the religious exercise at issue is more dangerous* than those activities even when the same precautions are applied." *Id*. at 63 (emphasis added). The Ninth Circuit has applied this standard. *See Bacon v. Woodward*, 104 F.4th 744, 751 (9th Cir. 2024) (comparing "firefighters based on a secular criterion" with "firefighters who objected to vaccination on purely religious grounds" and applying strict scrutiny); *Fellowship of Christian Athletes*, 82 F.4th at 672 (2023) (comparing Fellowship of Christian Athletes with secular school groups and applying strict scrutiny).

But here, the City attempts to compare *all* food distribution events with *all* private gatherings, inapposite to *Tandon*. Because the City misidentifies the appropriate comparators, the evidence it submits about the risks present at *all* food distribution events versus private gatherings is irrelevant. This evidence is largely a variety of conclusory opinions of Parks and Recreation Department employees. In these Declarations, the City's employees do not draw any distinction between religious and secular food distribution events, or even food



PROVIDENT LAW

distribution events at Cave Creek Park at Cactus specifically.[3] *See generally* Def's Exs. 1, 2, 3, 4, and 5. This evidence does not demonstrate that the risks the City asserts underlie its interests in the Ordinance are different at religious versus secular (non-religiously motivated) food distribution events, or as applied to Plaintiffs.

Further still, the Supreme Court explained that identical risks are not required for religious and secular activities to be comparable. Rather, a law is not generally applicable "if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a *similar* way." *Fulton*, 593 U.S. at 534 (emphasis added). Here, the City's own employees acknowledge that private gatherings, too, create trash, litter, and debris. *See* Def's Ex. 4 ¶ 11; Def's Ex. 5 ¶ 9. Allowing these events to take place in the City's parks without permits similarly undermines the City's alleged interests in regulating trash, medical waste, noise, and crowds. The City's evidence makes clear that some food distribution events and private gatherings create similar risks, rendering it not generally applicable. *See*, *e.g*., *Bacon* at 747 (9th Cir. 2024) (holding the City's vaccination policy was

[3] Councilwoman Debra Stark has submitted a Declaration wherein she alleges that she has received complaints about food distribution events at "Cave Creek Park" but her Declaration does not specify whether any of the complaints were about Cave Creek Park at Cactus, specifically. (*See generally* Def's Ex. 1.) As explained by Director Whitfield, "Cave Creek Park is a large contiguous park located within the City that has been divided into six separate sections (from north to south): Thunderbird, Sweetwater, Larkspur, Cactus, Sandlilly, and Cholla." Def's Ex. 2 ¶ 39. Because Plaintiffs' ministry is currently only limited to Cave Creek Park at Cactus, none of the City's evidence demonstrates it has an interest in limiting Plaintiffs' food distribution in particular. *See, e.g*, *Bates*, 146 F.4th at 772.



PROVIDENT LAW

not generally applicable as it was underinclusive and "failed to fully account for the issues that would undermine its interest.").

Common sense dictates that some food distribution events and private gatherings create comparable risks of crowds, trash, and noise. This is particularly true here because the Ordinance does not distinguish between sizes of the event at all. Under the Ordinance, a *single* religious individual is required to get a Parks Services Permit while a "social organization event[]" of hundreds is not. Pls' Ex. 1, Sec. 24-45(B)(6). The Court should not accept the City's implied assertion that a pastor handing out a bag of pretzels creates more trash, litter, and debris than an intoxicated crowd at a wedding reception throwing confetti. And, as explained, the City's evidence does not show what risks, if any, religious food distribution events or Plaintiffs' events present. Under *Tandon*, the City has misidentified comparators and fails to acknowledge that activities need be only similar, not identical, to be comparable.

***c. The Director has the Discretion to decide when the Ordinance applies.***

Next, the City seeks to distinguish *Fulton* by claiming that "there are no individual exemptions here. Only certain *classes* of events." (Resp. in Opp. at 14) (emphasis in original). This argument misses the point. The City's permitting scheme is not generally applicable because Director Whitfield confirmed he has the discretion to determine whether an individual or organization is subject to the Ordinance *at all*. Repeatedly throughout his deposition, Mr. Whitfield testified that he and the Parks and Recreation Department staff decide on a case-by-case "fact-intensive" basis whether an organization or individual must



PROVIDENT LAW

seek, and receive, a Parks Services Permit under the Ordinance. Pls' Ex. 4 (Whitfield Dep. 131:3-7, 48:10-14; 132:3-17.) The City's assertion that "Parks Department staff do *not* have discretion to waive or withhold permits from otherwise-qualifying food-distribution events on an individual basis" is a red herring. (Resp. in Opp. at 15) (emphasis in original). The mere existence of a discretionary mechanism renders a law not generally applicable. *Fellowship of Christian*, 82 F.4th at 685. "This reflects the overarching principle that, to avoid strict scrutiny, a supposedly neutral policy cannot leave officials with the discretion to decide *when the policy applies*." *Bates*, 146 F.4th at 796 (emphasis added). Because Director Whitfield testified he has the discretion to determinate *when the Ordinance applies*, *see id.*, it is not neutral and generally applicable, triggering strict scrutiny in which the City must exempt Plaintiffs unless it can prove that denying them an exemption is the least restrictive means of achieving a compelling interest. *Fulton*, 593 U.S. at 523. The City has never tried to meet that high threshold. Plaintiffs' Free Exercise Claim prevails under both *Tandon* and *Fulton*.

**II. Plaintiffs' food distribution is clearly expressive conduct.**

The City ignores relevant case law holding that parties with less expressive conduct than Plaintiffs engaged in protected Free Speech and Expressive Association.[4] Expressive

[4] The City briefly argues that Plaintiffs have "waived" any argument as to this issue. (Resp. in Opp. at 16.) The City is incorrect. In their Motion, Plaintiffs raised the same facts and argument herein that Plaintiffs engage in expressive conduct as they did to argue that they engage in expressive association. *See* Mot. at 16 and 22. Plaintiffs were not required to use the exact term "expressive conduct" or cite to a particular case in their Motion to raise the argument before the Court in their initial briefing. *See, e.g. Sweet v. Cardona*, 121 F.4th 32, 44 (9th Cir. 2024) (concluding that a party did not waive its case-specific argument because "a party does not have to cite a particular case to adequately raise an issue."). In fact, the City

conduct is found when a party displays "an intent to convey a particularized message and the likelihood is great that the message will be understood by those who view it." *Spence v. Washington,* 418 U.S. 405, 409–11 (1974). As argued in the Plaintiff's Motion, it is clear from the moment one approaches Mr. Brace and St. Herman's Table that they are distributing food to express, by word and deed, the particularized message that God loves all people and all are welcome at his table. *See* Pls' Mot. at 22; Def's Ex. 8 (Brace Dep. 111:20-21; 24:19-22 (Mr. Brace testifying "the message is we're all welcome at God's table."); 25:3-16.) "We are all welcome at God's table" is stated verbatim on St. Herman's welcome banners. Pls' Ex. 3 (Brace Supp. Decl. Ex. A.). To crystalize this message, Plaintiffs display icons of Christ and Orthodox saints and pass out Bibles and cards with images of saints on them next to the food. Pls' Ex. 3 (Brace Supp. Decl. ¶ 11 and Exs. A and B.) This is more than sufficient to meet *Spence*'s test. *See, e.g., Nourish Our Neighbors v. City of Dayton, Ohio*, 2026 WL 1800996, at *5 (S.D. Ohio June 23, 2026) ("While mere food and clothing distribution in itself may not qualify as expressive conduct, NON's distribution, coupled with its display of promotional advertisements/banners and dissemination of literature, is surely intended to convey a message, . . . which is likely understood by those who view it."); *Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, 901 F.3d 1235, 1240–42 (11th Cir. 2018)

---

itself does the same but in reverse; it uses its arguments that Plaintiffs did not engage in expressive conduct to argue that Plaintiffs did not engage in expressive association. (Resp. in Opp. at 29 (citing its pages 15-19)). Moreoever, Plaintiffs are responding to arguments made by the City in its opposition brief, and the City clearly has had an adequate opportunity to dispute that Plaintiffs engage in expressive conduct.



PROVIDENT LAW

(finding plaintiff's food sharing to be expressive conduct where plaintiff displayed signs that said, "food is a human right, not a privilege"); *Compare Krishna Lunch of S. California, Inc.*, 651 F. Supp. at 1170 (denying motion for preliminary injunction because of the lack of these indicia when plaintiff handed food). Plaintiffs display an intent to convey a particularized message and there is no doubt that their message is likely to be understood. The only evidence in the record is that this message *is* understood by homeless individuals every Thursday evening. Def's Ex. 8 (Brace Dep. 51:16-22; 24:19-22); Pls' Ex. 3 (Brace Supp. Decl. ¶ 12.)

**III. The City's remaining arguments are unavailing.**

***a. The Ordinance is obviously content-based.***

The City's assertion that the Ordinance is not content-based is untenable. Contrary to the Ninth Circuit, the City asserts that its permitting scheme is not content-based because "charitable *motivation* is not itself an expressive message." (Resp. in Opp. at 22) (emphasis in original). But a "policy facially discriminates . . . when it regulates speech based on the specific motivating ideology or perspective of the speaker." *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 899 (9th Cir. 2018) (internal quotation marks and citation omitted). Here, the motivating ideologies that the Ordinance facially targets are charitable, humanitarian—and as argued by the City—religious ones. In its TRO ruling, the Court rightly noted that "the text of the ordinance would seem to allow a restaurant to conduct a food distribution event just like St. Herman's for the general public if the 'purpose' of that event

was drumming up future business instead of charity." (Docket No. 18, at 6.) The City has given the Court no reason to second guess this conclusion.[5] The Ordinance is content-based.

***b. The City does not genuinely challenge Plaintiffs' Equal Access claim.***

The City admits that Plaintiffs cannot engage in food distribution—or eat with their homeless friends—on an equal basis with non-charitable individuals and organizations or with private gatherings in its parks. (*See* Resp. in Opp. at 10, n.4.) Instead, the City again asserts that Plaintiffs are not engaged in "expressive religious activit[y]" and asks this Court to be the first to hold that "an equal-access claim fails when a law satisfies the requirements of a valid time, place, and manner restriction, including content neutrality[.]" (Resp. in Opp. at 27 (citing *Faith Ctr. Church Evangelistic Ministries v. Glover*, 480 F.3d 891, 896 (9th Cir. 2007) (Bybee, J., dissenting from the denial of rehearing *en banc*)). The City cites only a dissent from a petition for *en banc* hearing to support its request. The Court should decline the City's invitation. As addressed below, the Ordinance is not a reasonable time, place, or manner restriction *because it is content-based*. And the City cannot cite any governing authority that holds such a restriction can displace a religious adherent's equal access to public forums. As explained both herein and in their Motion, Plaintiffs engage in expressive conduct

[5] As explained above, the City claims no distinction between charitable and religious motivation in the Ordinance and it appears to concede in its footnote number 4 that secular organizations without a charitable or humanitarian motivation are exempt from the food distribution permitting scheme. (Resp. in Opp. at 10, n.4.) Moreover, the City's reliance on *Damon v. Hukowicz*, 964 F. Supp. 2d 120 (D. Mass. 2013) and *Santa Monica Food Not Bombs v. City of Santa Monica* 450 F.3d 1022 (9th Cir. 2006) are misplaced as those cases did not address an ordinance that facially targeted ideologically motivated speech.



PROVIDENT LAW

and are denied weekly (and thus equal access) to the City's parks to distribute food in furtherance of their religious exercise and message. Their Equal Access Claim prevails.

***c. The City ignores the definition of Expressive Association.***

As discussed in Plaintiffs' Motion, Plaintiffs are engaged in expressive association when they assemble every Thursday with their homeless friends at Cave Creek Park at Cactus to share a meal and to advance their religious message that all are welcome at God's table and all are worthy of his love. Def's Ex. 8 (Brace Dep. 111:20-21; 24:19-22; 25:3-16.) This falls squarely within the Ninth's Circuit definition of expressive association:

> Individuals engage in expressive association when they join with others to pursue a wide variety of political, religious, cultural, or social purposes, including the advocacy of both public and private points of view, the advancement of beliefs and ideas, and the transmission of a system of values.

*Sullivan v. Univ. of Wash.*, 60 F.4th 574, 579 (9th Cir. 2023) (cleaned up).

As detailed, the Ordinance burdens this association by criminalizing Plaintiffs' weekly expressive association.

**IV. Plaintiffs meet all of the elements for permanent injunctive relief.**

As noted in Plaintiffs' Motion, *see* Pls' Motion at 2 n.1, the Court has already found under *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008) that Plaintiffs are likely to suffer irreparable harm and that the balance of equities and public interest weigh in their favor in this case. As explained by the Ninth Circuit, when deciding constitutional claims under *Winter*'s elements, success on the merits "is the most important factor[.]" *Baird v. Bonta*, 81 F.4th 1036, 1042 (2023). After such a finding, "most courts hold that no further



PROVIDENT LAW

showing of irreparable injury is necessary[]" under *Winter*'s second element. *Id*. (citation omitted). Likewise, "[a] plaintiff's likelihood of success on the merits of a constitutional claim also tips the merged [*Winter*] third and fourth factors decisively in his favor." *Id*. Accordingly, Plaintiffs focused their arguments in their Motion on success on the merits of their claims—as success on the merits also decisively tips *Winter*'s second, third, and fourth factors in their favor.[6] *Id*. Plaintiffs also limited their arguments in their Motion because "[a]ttempts to re-litigate matters already decided by the court, . . . are disfavored." *JMA Invs. v. Mt. Hawley Ins. Co.*, 2014 U.S. Dist. LEXIS 121281, *2 (2014) (citing *Casey v. Albertson's Inc*., 362 F.3d 1254, 1261 (9th Cir. 2004)).

But the City claims that Plaintiffs were required to re-argue all elements for permanent relief in their Motion. (Resp. in Opp. at 29.) However, the case that the City cites in support of its position is unpublished and states no such thing. (*Id*. (citing *Luxury Auto Collection LLC v. Walker*, No. CV-21-02025-PHX-SRB, 2022 WL 17361292, at *7 (D. Ariz. July 6, 2022)). *Luxury Auto* addresses establishing the elements for injunctive relief in any *initial* motion, not a subsequent motion after the Court has already found that Plaintiffs meet the *Winter* standard and consolidated the merits and trial of the case under Rule 65(a). Nonetheless, as explicitly stated in their Motion, Plaintiffs did not waive any *Winter* argument

---

[6] The Supreme Court has explained that "[t]he standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success." *Amoco Prod. Co. v. Vill. of Gambel*l, 480 U.S. 531, 546, n.12 (1987) (citation omitted).

and the City has had an opportunity to argue otherwise as to all elements necessary for permanent injunctive relief.[7] (*See* Resp. in Opp. at 29-30.)

There is no reason to disturb the Court's findings that Plaintiffs meet all of *Winter*'s elements. As stated, the Ninth Circuit has reiterated that "the deprivation of constitutional rights unquestionably constitutes irreparable injury." *Baird*, 81 F.4th at 1036 (9th 2023) (cleaned up). And, under *Winter*'s third element, issuing a permanent injunction merely preserves the status quo in the City as it has been prior to the Ordinance and during this litigation. The Court has already so found. (Docket No. 18, at 8.) Moreoever, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 731 (9th Cir. 2022) (citations omitted). Finally, remedies available at law, such as monetary damages, are inadequate to compensate for Plaintiffs' ongoing threat of criminalization for their weekly ministry. *See, e.g., Casala, LLC v. Kotek*, 789 F. Supp. 3d 1025, 1043 (D. Or. 2025) (holding remedies at law were inadequate where ongoing threat to First Amendment right existed).

For these reasons, Plaintiffs respectfully request that the Court deny the motion to dismiss, grant judgment and permanent injunctive and declaratory relief to Plaintiffs, enjoining the City from enforcing the Ordinance, particularly as against them.

**DATED:** this 29th day of September 2026.

[7] Should the Court conclude that the City has not had an adequate opportunity to address all of the elements necessary for permanent injunctive relief, Plaintiffs do not object to the City filing a sur-reply to present those arguments again.



PROVIDENT LAW

**PROVIDENT LAW®**

Christopher J. Charles, Esq.

*Ann-Marie White René*

Ann-Marie White René, Esq.
*Pro Hac Vice**

Steven T McFarland, Esq.
*Pro Hac Vice**
Washington Bar License No. 11111

**Certificate of Service**

I certify that on September 29, 2026, I filed this document via the Court's CM/ECF filing system which will serve Defendant's counsel of record.

*Ann-Marie White René*

Ann-Marie White René, Esq.